JESSIE LANGTON, Respondent, v. CHARLES KOPS, Appellant.

(171 N. W. 334.)

**Specific performance — contract for deed — performance of contract — tender of amount due — sufficiency of tender.**

Plaintiff brought action against the defendant to compel defendant to convey to plaintiff by warranty deed certain lands in pursuance to the terms of a certain contract for deed, the terms of which had been fully performed by the

plaintiff, and the provisions of which entitled him to a deed upon full- performance of the conditions therein. Plaintiff tendered to defendant the full amount due on said contract on January 4, 1917, in the sum of $2,253.94. Defendant claimed that the amount tendered was not sufficient to pay the balance due on the contract price of the land; *held* that the plaintiff's tender was sufficient in form and amount, and entitled him to the warranty deed for the land.

Opinion filed January 31, 1919.

Appeal from a judgment of the District Court of Ramsey County, Honorable *Frank E. Fisk,* Judge.

Affirmed.

*Frich & Kelly,* for appellant.

The declarations of an assignor after he has made the assignment and thus parted with his interest are not competent as against the assignee as admission, and this is true even though the action is brought in the name of the assignor if prosecuted for the benefit of the assignee. 1 Enc. Ev. p. 535, and cases cited.

The admission of grantors and former owners are not admissible against their grantees or those in priority of them if made after the grant. 1 Enc. Ev. p. 514, and cases cited.

The admissions of an indorser of notes made after the transfer are likewise inadmissible. Bank v. Bank (Ga.) 36 S. E. 265; Eyerman v. Piron (Mo.) 52 S. W. 299; Zimmerman v. Kearney (Neb.) 78 N. W. 336; Pearce v. Stricker (N. M.) 54 Pac. 748; Wanger v. Grimm, 169 N. Y. 421; 4 Enc. Ev. p. 93 and cases cited.

Where there is an agreement set out in the note for the payment of interest annually, or semiannually, the maker is chargeable with interest at the like rate upon each deferred payment of interest in like manner as if he had given a promissory note for the same amount. Bledsoe v. Bixon, 69 N. C. 89, cited with approval in Hovey v. Edmison, 3 Dak. 449, 22 N. W. 594; Ruloff v. Hunt (Mich.) 83 N. W. 370; Magruder v. De Haven (Ky.) 52 S. W. 795; Farm Inv. Co. v. Wyoming College, 10 Wyo. 240, 68 Pac. 561; Townsend v. Riley, 46 N. H. 300; Carpenter v. Welch, 40 Vt. 251; Hamilton County v. Chase (Iowa) 152 N. W. 580; Lowe v. Schuyler (Mich.) 153 N. W. 786; 22 Cyc. 1509 and cases cited; Comp. Laws 1913, §§ 7193, 7197.

The mutuality of remedy required by *statute is* wholly lacking in this case. Knudtson v. Robinson, 18 N. D. 12; 39 Cyc. 1671, and cases cited.

In order to make a valid tender of either money or chattels the thing to be tendered must be actually produced and offered to the party entitled thereto.  38 Cyc. 143, and cases cited; Comp. Laws, §§ 5800, 5815; Whittaker v. Roller Mills (N. J.) 38 Atl. 289; 12 Enc. Ev. 483.

To prove a tender the evidence must be full, clear, and satisfactory, and it must be made in good faith.  12 Enc. Ev. 490, and cases cited.

*J. C. Adamson,* for respondent.

GRACE, J. Appeal from a judgment of the district court of Ramsey county, North Dakota, Honorable Frank E. Fisk, Judge.

The action is one brought by the plaintiff against the defendant for specific performance to compel the defendant to convey to plaintiff by warranty deed to S. ½ of S. E. ¼ and the S. ½ of S. W. ¼ of section 1, township 156, range 60 West of the 5th principal meridian and containing 160 acres more or less according to the government survey thereof.  The right to require specific performance and the conveyance by warranty deed of the land is based upon conditions and provisions of a certain contract for deed with reference to said land which will be more fully described hereafter and with the terms of which the plaintiff claims full compliance.  On the 9th day of March, 1909, one Oliver Davidson entered into a contract for deed with one James H. Langton with reference to the land in question.  The contract was recorded in the office of register of deeds of Ramsey county, North Dakota, March 5, 1913.  The purchase price of the land was $3,200, and was payable on or before five years from March 9, 1909.  A promissory note for $3,200, dated March 9, 1909, for the purchase price, and payable on or before five years after date, was executed by Langton to Davidson. On the 24th day of October, 1913, Davidson conveyed the land by warranty deed to Charles Kops subject to the contract.  On the 8th day of August, 1912, James H. Langton made a written assignment of his interest in the contract to Lovina Langton.  On the 17th day of March, 1916, Lovina Langton, then Lovina Hutchinson, and Mark Hutchinson, her husband, by warranty deed sold and conveyed all her

right, title, and interest in the contract and the land to the plaintiff. The following payments were made upon the contract by James H. Langton and the plaintiff herein:

| | |
|---|---:|
| November 3, 1909 | $576.80 |
| December 18, 1911 | 411.94 |
| In 1912 | 163.27 |
| December 18, 1912 | 500.00 |
| December 18, 1913 | 161.00 |
| February 14, 1916 | 522.00 |

January 4, 1917, tendered as the balance due upon the contract at that date, in the sum of $2,253.94.

There is really but a single question presented in this case, namely: Was the sum $2,253.94 tendered to defendant by plaintiff on January 4, 1917, equal to the amount due on the contract at that date? The defendant, for two reasons, claims it was not. First, that the payment of $163.27, paid in 1912 for the purpose of taking up two interest coupons on a certain mortgage which was against the land and which was about to be foreclosed by reason of the nonpayment of such interest coupons, were not a proper credit in plaintiff's favor and not chargeable to the defendant. It appears from the record that it was the duty of Davidson to have paid the interest coupons. He did not do so, and in order to prevent a foreclosure, James H. Langton, to whom Davidson had issued the contract for deed for the land, paid the interest coupons and charged the amount to Davidson. This was before the land was deeded to Kops by Davidson and was a proper charge in Langton's favor against Davidson, and entitled him to credit in that amount on the contract at that time. Kops took the deed to the land from Davidson subject to the contract of deed and subject to any rights of Langton. He took it, therefore, subject to the credit of $163.27, paid to take up the interest coupons paid by Langton to prevent foreclosure of the mortgage which it was first the duty of Davidson to have paid. Under these circumstances, the $163.27 was properly credited as a payment on the contract.

The remaining question relied upon by defendant is that he is entitled to charge interest on the annual interest after it became due and

payable. Assuming this to be true, we are of the opinion that the amount tendered January 4, 1917, was sufficient to discharge the amount owing defendant on the contract on that day. The purchase price was secured by retaining a lien on the crops raised on the land during each year. A portion of the crops was turned in in each of several years, with the exception of 1914, and applied in reduction of interest due on the contract, and the balance applied to reduction of principal. The payment on February 14, 1916, of $522 was undoubtedly proceeds from the crop 1915. January 4, 1917, the full amount was tendered so that it included all that was due upon the contract at that time. We think it was the intention of the contract to have a portion of the crop of each year applied to the discharge of the sum which remained owing upon the contract each year during the life of the contract, and when the contract is so construed, the amount tendered on January 4, 1917, would be sufficient to pay the balance due upon the contract. This conclusion, as we view it, is also the most favorable to the defendant. If the contract were construed as defendant contends it should be, we believe the amount tendered on January 4, 1917, would be more than would actually be due upon the contract. For instance, the whole purchase price was due five years from the date of the contract, the purchase price being evidenced by the promissory note for $3,200. The time of the payment of the note was extended to some time in 1918. All that Langton or the plaintiff was compelled to pay in any year on the contract before its maturity according to the strict terms of the contract was the interest on the whole amount, which amounted to $224 per year. If, for instance, Langton had paid $224 interest on the 9th day of March, 1910, he would have nothing more to pay until the 9th day of March, 1911, when he again would pay the interest, and so on from year to year during the five-year period or any further period to which the time of payment of the note was extended. If it be assumed, as defendant claims, that he is entitled to annual interest, and, if any annual interest is not paid when due, is entitled to interest thereon, the amount tendered still would be sufficient to pay the full amount due on the contract January 4, 1917; for, if Langton or the plaintiff had paid the annual interest in the manner claimed by defendant and had taken the balance of the payment made in any given year and placed it at interest at the same rate tho

contract drew, the aggregate of such interest on each of the excess payments in the different years until the time of final payment of the contract and note, it would aggregate a very considerable amount on January 4, 1917. In other words, if the contract were construed as defendant wishes it to be, the only amount he is entitled to recover in any given year is the annual interest until the time of the final settlement. The plaintiffs would be entitled to charge interest on any payments over and above the annual interest from the time such payment was made until the time of final settlement on January 4, 1917. It is quite evident if this were done, the amount tendered is not only sufficient, but, we believe, in excess of the amount actually due upon the contract on January 4, 1917. However, we believe the method of payment adopted by Davidson and Langton and the method of computing the interest should prevail. The plaintiff is not complaining in regard to that method, and, as we view it, the defendant certainly cannot. By the strict terms of the contract, there were no particular payments to be made each year of the contract. However, it does appear from the contract that Langton and therefore the plaintiff had the right to pay more on the contract each year than the crops amounted to. The contract is somewhat vague in this regard. We quote a portion of the contract:

"It is virtually understood and agreed by and between the parties hereto that the annual payment to be made on this contract shall be made out of the proceeds of one half of all crops grown on the within-described land during the continuance of this contract or until the full amount shall have been paid. Further, that the party of the second part shall have the right and privilege to pay as much more than the proceeds of one half of all crops as he shall elect during each and every year of this contract. It is especially understood and agreed between the parties hereto that the party of the first part shall be entitled to two-thirds share of said crops during the season of 1909."

From this, it appears that Langton or his assignee had the right to apply one half of the crop from the land each year upon the amount owing upon the contract. We think if the crop were harvested and threshed the application of one half the crop, or more, if Langton or his assignee desired, might be paid upon the contract any time during that year and they could do likewise each year during the life of the

contract. This, in fact, was the method pursued by Langton and Davidson and by plaintiff, Langton's assignee, though the whole purchase price was not payable for five years from March 9, 1909, and later a further extension of the time of the $3,200 note was made in writing. Where partial payments are so made, the rule commonly known as the United States rule is generally applied. That rule is to apply the payment, in the first place, to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes toward discharging the principal, and the subsequent interest is to be computed on the balance of principal remaining due. If the payment be less than the interest, the surplus of the interest must not be taken to augment the principal; but interest continues on the former principal until the period of time when the payments, taken together, exceed the interest then due to discharge which, they are applied, and the surplus, if any, is to be applied towards the discharge of the principal, and the interest is to be computed on the balance as aforesaid, and this process continues until final settlement. This is, substantially, the rule which was used by plaintiff in making the computation by which they arrived at the amount which was tendered on January 4, 1917. Most of the decisions of the various states follow this rule. The rule was first laid down by the United States Supreme Court in Story v. Livingston, 13 Pet. 359, 10 L. ed. 200; Woodward v. Jewell, 140 U. S. 247, 35 L. ed. 478, 11 Sup. Ct. Rep. 784. There are a few cases, however, that follow what may be termed the "mercantile rule." That rule is to compute the interest on the principal debt until maturity or any given time, and the interest on payments made from the time when made until such time, and then deduct the sum of the one from the other. We believe the defendant has rather invoked the mercantile rule, or at least a part of it. If he desired to do so, he should have figured annual interest for the whole time and then interest on annual interest for the time remaining past due and then interest on the payments from the time they were made until the time of settlement, and then deduct one amount from the other. If this had been done, we believe that the amount tendered January 4 would have been found to have been too large. The plaintiff, however, is not complaining and is satisfied with the method of computation which was used in determining the amount which was claimed to be due on January

4, 1917. This amount was arrived at by the application, we believe, of the method of casting interest known as the United States rule, or substantially that rule, and this being a fair method and one recognized generally by the courts, including the United States Supreme Court, we think it is fair and the conclusion reached should not be disturbed.

The judgment of the District Court is affirmed, with the statutory costs.

CHRISTIANSON, Ch. J., and BRONSON, J., concur in result.